1
2   Diane C. Stanfield (CA Bar No. 106366)
    Leib M. Lerner (CA Bar No. 227323)
3   ALSTON & BIRD, LLP
    333 South Hope Street, Sixteenth Floor
4   Los Angeles, California 90071-1406
    Telephone: 213.576.1000
5   Facsimile: 213.576.1100
    diane.stanfield@alston.com
6   leib.lerner@alston.com

7   Counsel for the Official Committee of Unsecured
    Creditors

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                   **NORTHERN DIVISION**

12  In re                                CASE NO. 9:09-bk-10165-RR

13  ORANGE COUNTY NURSERY, INC., a        Chapter 11
    California corporation,
14                                        **FIRST INTERIM APPLICATION FOR
                                          COMPENSATION AND REIMBURSEMENT**
15          Debtor.                       **OF EXPENSES OF ALSTON & BIRD LLP,
                                          COUNSEL FOR THE OFFICIAL**
16  Tax Id # 95-1681912.                  **COMMITTEE OF UNSECURED
                                          CREDITORS; DECLARATION OF LEIB M.**
17                                        **LERNER IN SUPPORT THEREOF
                                          [11 U.S.C. § 331]**
18

19                                        Date:    October 7, 2009
                                          Time:    2:00 p.m.
20                                        Place:   United States Courthouse
                                                   Courtroom 201
21                                                 1415 State Street
                                                   Santa Barbara, CA 93101
22

23
        **TO THE HONORABLE ROBIN RIBLET, UNITED STATES BANKRUPTCY**
24
    **JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATE TRUSTEE, AND**
25
    **OTHER INTERESTED PARTIES:**
26
        Alston & Bird, LLP ("A&B"), hereby makes its First Interim Application for Payment
27
    of Interim Fees and Reimbursement of Expenses in the above-captioned case.
28

                                        1

31502882.2

1

**Table of Contents**

I.      INTRODUCTION ...................................................................................1

II.     SUMMARY OF ENGAGEMENT ........................................................1

III.    NARRATIVE HISTORY OF CASE AND BACKGROUND....................2

IV.     SUMMARY OF SERVICES RENDERED .............................................4

        A.      Summary of Services By Task Code.........................................5

                1.      Case Administration – Task Code B110............................5

                2.      Meeting of Creditors – Task Code B150............................6

                3.      Fee/Employment Application – Task Code B160 .............6

                4.      Shareholders Issues– Task Code B191 ...........................6

                5.      Plan and Disclosure Statement – Task Code B320...........6

                6.      Miscellaneous (Asset Analysis and Recovery, Task
                        Code B120; Business Operation, Task Code B210;
                        Claim Administration, Task Code B310; Litigation, Task
                        Code B330; Restructuring, Task Code B420)....................7

V.      SUMMARY OF COSTS AND EXPENSES............................................8

        A.      Long Distance Calls (001) ...........................................................8

        B.      Duplicating (004 & 006)................................................................8

        C.      Legal Research (052; 074; 097; 718)...........................................8

        D.      Air Courier (016)...........................................................................8

        E.      Postage (003) ...............................................................................9

        F.      Travel Expenses (028) .................................................................9

        G.      Meals (027) ...................................................................................9

        H.      Attorney Service Charges (036) ..................................................9

        I.      Voluntary deductions....................................................................9

VI.     LEGAL ANALYSIS........................................................................................9

VII.    CONCLUSION ........................................................................................10

i

31502882.2

## Table of Authorities

**FEDERAL CASES**

*In re Circle K Corp.,*
    294 B.R. 111 (Bankr. D. Ariz. 2003)................................................................10

*In re Nucorp Energy,*
    764 F.2d 655, 658 (9th Cir. 1985) ...............................................................10

*In re Yermakov,*

    718 F.2d 1465, 1471 (9th Cir. 1983) .........................................................10

*Southwestern Media, Inc. v. Rau,*
    708 F.2d 419 (9th Cir. 1983) ......................................................................10

**FEDERAL STATUTES**

11 U.S.C. § 330(a)(1)(A)................................................................................10

11 U.S.C. § 330(a)(3) ...................................................................................10

Bankruptcy Code section 330(a)(1)..............................................................9

Bankruptcy Code section 341(a) ..................................................................2

Bankruptcy Code section 1103.....................................................................9

31502882.2

# I.    INTRODUCTION

A&B, counsel for the Official Committee of Unsecured Creditors, hereby applies for entry of a Court order allowing compensation of $129,134.40 in fees and reimbursement of expenses of $4,146.48 incurred during the period comprised of February 2 , 2009 through and including August 31, 2009 (the "Fee Period"), in the total amount of $133,280.88.

A&B reserves its right to, and shall, supplement this application to seek reimbursement for fees and expenses incurred after August 31, 2009 through the date of the hearing on this Application.

# II.    SUMMARY OF ENGAGEMENT

A&B serves as counsel to the Official Committee of Unsecured Creditors (the "Committee").  The Committee was appointed on March 3, 2009 [*See* Docket No. 184]. The Order approving the retention of A&B as counsel for the Committee *nunc pro tunc* to March 3, 2009, was entered on April 22, 2009 [Docket No. 209].  This Application is A&B's first Application for payment of fees and expenses incurred since the beginning of this case.

The attorneys who have been primarily responsible for providing services to the Committee are Diane C. Stanfield, Leib M. Lerner and, for a period of time, Dean G. Rallis Jr.  (Mr. Rallis is no longer with A&B.)  To provide effective, efficient representation to the Committee, A&B allocated responsibilities among attorneys based upon each individual's comparative expertise and knowledge, and allocated work to attorneys with lower hourly rates whenever practicable.  Mr. Rallis was primarily responsible for matters relating to the initial analysis of the case and representation of the Committee.  Ms. Stanfield was responsible for strategizing and negotiations concerning the Plan and Disclosure Statement, negotiation with counsel for the Debtor concerning other issues arising in the case, communications and negotiations with the Minority Shareholders concerning resolution of issues concerning possible conversion of the case or appointment of a trustee as well as subordination issues which are currently the subject

1

1 of cross-motions between Debtor and the Minority Shareholders, and most court

2 appearances.  Mr. Lerner was responsible for day to day oversight of the case, regular

3 communication with Committee members, attendance at depositions and meetings, and

4 participating in strategy and negotiations concerning the Plan and Disclosure Statement.

5      A&B believes it has allocated its resources effectively and efficiently, and

6 consequently that it minimized the expense to the estate and avoided unnecessary

7 duplication of effort.  The rates charged by A&B professionals are comparable to those

8 charged by other experienced and skilled professionals, with bankruptcy and

9 nonbankruptcy practices, in the Central District of California.  In addition, A&B offered its

10 services to the Committee for professional and paraprofessional services on an hourly

11 basis discounted by fifteen percent (15%) off of its regularly charged hourly rates.  A&B

12 has not charged for travel time to and from Court appearances, to the Bankruptcy Code

13 section 341(a) meeting of creditors, or to depositions noticed by the Debtor or the

14 Minority Shareholders.

15          **III.    NARRATIVE HISTORY OF CASE AND BACKGROUND**

16      Orange County Nursery, Inc. (the "Debtor") filed a voluntary chapter 11 petition on

17 January 22, 2009 (the "Petition Date"). Debtor continues to manage and operate its

18 business as a debtor in possession.  The Debtor operates as a wholesale tree nursery.

19 As of the Petition Date, the Debtor states that it managed over 700 acres with growing

20 grounds in California and Texas.  It sells wholesale nursery stock which is used primarily in

21 the housing, construction, and landscape industries, which have been hard hit by recent

22 decline in the economy and downturn in housing, real estate, and construction markets.

23 The Debtor also sells nursery stock to retailers who sell to consumers.[1]

24      Some of the unsecured creditors continue to do business with the Debtor, and due

25 consideration has been given at all times to the ultimate goal of Debtor's successful

26 reorganization.  However, the priority of the Committee and its counsel has been to

27 _____

28      [1] The background of the case relies in part on descriptions provided by Debtor, and,
to that extent, is meant to be a summary of the pertinent facts from Debtor's information.

31502882.2

1  ensure payment in full of all unsecured claims through the negotiation of a suitable Plan

2  and Disclosure Statement.

3        A significant factor contributing to the Committee's activity in the case has been

4  the Debtor's ongoing dispute with its minority shareholders (the "Minority

5  Shareholders").  Debtor litigated with the Minority Shareholders for a period of years

6  prior to the filing of the Petition, and the substance of that litigation has continued into

7  the Chapter 11 proceedings (the "Case").  On February 5, 2009, the Minority

8  Shareholders made a Motion to Dismiss Case for Abuse (the "Dismissal Motion")

9  [Docket No. 32].   After analysis, A&B joined in Debtor's opposition to the Dismissal

10  Motion, based on the concern that dismissal of the case would virtually ensure that

11  the unsecured creditors would fare significantly worse than in an orderly

12  reorganization.  The Dismissal Motion was denied.

13        Subsequently, on May 15, 2009, the Minority Shareholders' filed their Motion to

14  Convert to a Chapter 7 Liquidation; or, Alternatively; to Appoint a Trustee or Examiner"

15  ("Conversion Motion") [Docket No. 218].  The issues raised in the Motion were of concern

16  to the Committee, but the cost and potential delays of conversion and/or appointment of a

17  trustee were also of great concern.  The Committee believed it was making significant

18  progress in negotiating a beneficial treatment of the unsecured creditors in the Plan, and

19  was concerned that the Conversion Motion could derail those efforts and the case would

20  end up with no party faring as well as under the Plan that was under discussion.  A&B

21  filed an opposition to the Conversion Motion, and also engaged in a series of

22  communications with counsel for all parties to discuss alternatives to the Conversion

23  Motion, including brokering the possibility of a stipulated audit in place of conversion or

24  appointment of a trustee.  As a result of those discussions, the parties reached an

25  agreement in principal to stipulate to an audit, and the Minority Shareholders agreed to

26  (and did) take the hearing on the Conversion Motion off calendar.

27        During the same period, A&B worked closely with Debtor's counsel to draft a

28  proposed Plan to which the Committee would consent.  At the end of the process, A&B

31502882.2

1  had negotiated for terms of the Plan which included (1) payment in full of all allowed

2  unsecured creditors' claims; (2) interest at 6% from the commencement of the Case; (3)

3  a minimum 40% distribution to general unsecured creditors upon the effective date of the

4  Plan; (4) monthly payments on the balance commencing 30 days after the effective date,

5  to be paid by the Debtor to a blocked account automatically and distributed every six

6  months until all claims are paid in full with interest; and (5) the granting of a lien or liens

7  on the Debtor's real property located in Frio, Texas to secure the entire balance of the

8  general unsecured creditors' claims.  Debtor proposed its Plan of Reorganization during

9  its exclusivity period, and a hearing on the adequacy of the Disclosure Statement is

10  scheduled for September 16, 2009.

11         Presently, the Debtor and Minority Shareholders are litigating the issue of the

12  priority of the Minority Shareholders' claims, and the Committee has been involved in

13  those discussions to the extent necessary to ensure that those claims are not improperly

14  included as general unsecured claims or in any way asserted as superior to the

15  unsecured creditors' claims.  A&B conducted research on the issue that it presented to

16  both sides in the hope that the issue could be resolved as expeditiously and

17  inexpensively as possible; indeed, A&B proposed to the Debtor that it include the

18  subordination of the Minority Shareholders' claim in its proposed Plan pursuant to FRBP

19  7001(8).  The Debtor did so, which obviated the need for Debtor or the Committee to file

20  an adversary proceeding for the same relief.  A&B believes this to have saved the Estate

21  a significant sum in fees.

22                    **IV.    SUMMARY OF SERVICES RENDERED**

23         A&B is seeking allowance on an interim basis of compensation of $129,134.40 in

24  fees incurred during the Fee Period and $4,146.48 in costs.  The documentation of these

25  fees and costs is attached as exhibits to the Declaration of Leib M. Lerner ("Lerner

26  Declaration") as follows:

27         Exhibit 1:  A summary of all fees requested, divided by task code and also by

28  month in which the services were performed.

4

1    Exhibit 2:  For each individual billing time to the case, the hourly rate and period

2    each rate was in effect; the total hours for which compensation is sought, and the total

3    compensation requested.

4    Exhibit 3: A description of the professional education and experience of each

5    individual billing time to the case.

6    Exhibit 4:  A detailed listing of all time for which compensation is sought, by date,

7    description of service, amount of time spent, and identification of person rendering the

8    service (consisting of invoices for time billed and costs incurred for the months of April

9    through August 2009).

10    Exhibit 5:  A summary of all costs and expenses for which reimbursement is

11    sought, divided by category.

12    **A.    Summary of Services By Task Code**

13    1.    Case Administration – Task Code B110

14    As counsel for the Committee, A&B is subject to a myriad of administrative and

15    procedural requirements imposed by the day to day developments of the case, such as

16    reviewing pleadings and documents filed with the court, updating the Committee of the

17    case status, respond to Committee's inquiries and conducting other administrative tasks.

18    The administration of this Case has required somewhat extensive monitoring by A&B of

19    the activities between the Debtor and Minority Shareholders.  Specifically, A&B has

20    attempted to serve as an intermediary to keep the Case moving toward Plan

21    confirmation, and to keep the disagreements of the equity interest holders from

22    overtaking the case at the expense of unsecured creditors.

23    To that end, A&B participated in discovery in connection with Minority

24    Shareholders' Motion to Convert to a Chapter 7 Liquidation; or, Alternatively; to Appoint a

25    Trustee or Examiner" ("Motion").  As stated above, the issues raised in the Motion were

26    of concern to the Committee, but the cost and potential delays of conversion and/or

27    appointment of a trustee were also of great concern.  A&B brokered an agreement in

28    principal for the appointment of a stipulated forensic auditor; communicated with potential

5

auditors and obtained bids for the proposed audit; and participated in drafting a
stipulation describing the scope of such an audit.  It also continued its discussions with
both sides to finalize that agreement.  Although to date the stipulation has not been
finalized, the discussions resulted in defusing the issue to allow all parties to return to
efforts to finalize a Plan.  At all points during this process, A&B met with and
communicated with the Committee concerning the status of the matter on a regular (and
sometimes frequent) basis.

In this category, A&B provided 143.1 hours of service, and requests $56,840.75 in
compensation.

2.    Meeting of Creditors – Task Code B150

Time spent in this category pertained to preparing for and attending Debtor's
341(a) meeting.  In this category, A&B provided 2.8 hours of service, and requests
$1,139.00 in compensation.

3.    Fee/Employment Application – Task Code B160

A&B's services under this category pertain to the drafting of A&B's employment
application, notice of hearing and preparation of the present fee Application.  This
category also involves coordinating and communicating with the Debtor and its
professionals regarding noticing the hearing on the respective professional application
and other matters related to A&B's employment and fees.  In this category, A&B provided
42.8 hours of service, and requests $10,820.50 in compensation.

4.    Shareholders Issues– Task Code B191

A&B's services under this category pertain to general review of the status of
shareholder issues and initial review of the Minority Shareholders' claims.  In this
category, A&B provided 0.6 hours of service, and requests $362.10 in compensation.

5.    Plan and Disclosure Statement – Task Code B320

A&B's services under this category pertain to negotiating with Debtor and its
counsel concerning the terms of the Plan and Disclosure Statement.  Its negotiations
resulted not only in a Plan providing for all unsecured creditors' claims to be paid in full

31502882.2

1   with interest, but for a minimum 40% payment upon the effective date and the granting of

2   a lien or liens on the Debtor's real property located in Texas to secure the entire balance,

3   with monthly payments on the balance commencing after the 40% payment is made.

4   A&B has reviewed and negotiated the terms of the Plan and Disclosure Statement to

5   ensure that the negotiated terms were accurately stated, and has worked with Debtor to

6   ensure that the terms of payment to the unsecured creditors were consistent with the

7   long range goals of a successful reorganization.  A&B continues to work through title

8   issues concerning the Texas properties.

9       Additionally, A&B proposed to the Debtor that it include the subordination of the

10  Minority Shareholders' claim in the Plan pursuant to FRBP 7001(8), which obviated the

11  need for Debtor or the Committee to file an adversary proceeding for the same relief.

12  A&B believes this to have saved the Estate substantial fees.

13      In this category, A&B provided 120.8 hours of service, and requests $51,945.20 in

14  compensation.

15          6.      Miscellaneous (Asset Analysis and Recovery, Task Code B120;
                    Business Operation, Task Code B210; Claim Administration, Task
16                  Code B310; Litigation, Task Code B330; Restructuring, Task Code
                    B420)
17

18      This category includes services provided under various categories, with small

19  totals in each individual category.  It includes services rendered for Asset Analysis, which

20  pertained to reviewing the title status of real property in Frio County, Texas which had

21  been offered as security for the unsecured creditors claims; Business Operation, which

22  pertained to the review of a Variance Report provided by Debtor; Claim Administration,

23  which pertained to review of the Minority Shareholders' proof of claim and some analysis

24  of the basis therefor; Litigation, which pertained to review and analysis of various motions

25  in the case and preparation of responses thereto; and Restructuring, into which a small

26  portion of the time related to the Minority Shareholders' claim was placed.  These

27  categories amounted in the aggregate to 17 hours of service, and A&B requests

28  $8,026.85 in compensation.

31502882.2

## V.    SUMMARY OF COSTS AND EXPENSES

A&B is seeking allowance and reimbursement for $4,146.48 in costs and expenses.  All of these costs and expenses were billed at the rate that A&B customarily applies to its non-debtor clients.  Exhibit 5 to this application is a detailed report of all costs and expenses by Expense Task Code, broken down by month.  The following summarizes these costs and expenses, by type (the numbers in parentheses are A&B's internal codes for the costs).

A.    Long Distance Calls (001)

Representation of the Committee has necessitated various conference calls with the Committee to communicate on various topics.  A&B bills the actual costs of telephone services incurred for such conference calls and seeks reimbursement in this category in the amount of $34.11.

B.    Duplicating (004 & 006)

A&B internal photocopying of motion, notices, and other documents are billed to the client at the cost of $0.11 per page.  This rate is uniformly set by A&B and is comparable to the rate charged by a substantial number of other law firms in the community in both bankruptcy and nonbankruptcy engagements.  A&B seeks reimbursement in this category in the amount of $1,392.93.

C.    Legal Research (052; 074; 097; 718)

When legal research was required, it was necessary and cost efficient for A&B to conduct such research through online services such as LEXIS/NEXIS or Westlaw.  A&B bills the actual costs of using such services directly to its clients without surcharge.  A&B seeks reimbursement for this category in the amount of $725.31.

D.    Air Courier (016)

When the exigencies of this case required, A&B used air courier services (such as UPS) to deliver documents.  When A&B uses these services, it bills clients for the actual costs of services without surcharge.  A&B seeks reimbursement for this category in the

8

amount of $7.18.

E.     Postage (003)

A&B bills its clients for the costs of transmitting mail, without surcharge.  Postage is logged and billed to the client through a computer system, which calculates postage costs at the rate set by the postal service for the weight and class of a given mailing. A&B seeks reimbursement for this category in the amount of $834.10.

F.     Travel Expenses (028)

A&B bills its clients for reimbursement for actual costs of travel, including off-site parking and reimbursements of mileage at 0.55 cents per mile.   A&B seeks reimbursement for this category in the amount of $1,000.30.

G.     Meals (027)

A&B bills its clients for meals provided in connection with travel and in-office business meetings only, without surcharge.  A&B seeks reimbursement for this category in the amount of $3.80.

H.     Attorney Service Charges (036)

This Category includes both Court filing fees and the costs imposed by the outside messenger service that A&B uses to file its pleadings with the Court.  A&B bills these costs directly to its clients without surcharge.  A&B seeks reimbursement for this category in the amount of $148.75.

I.     Voluntary deductions

A&B has voluntarily written off $12,670.10 in fees incurred during the Fee Period, including travel time which was deducted.

## VI.    LEGAL ANALYSIS

Bankruptcy Code section 330(a)(1) provides that the Court may award to professionals who have been employed under Bankruptcy Code section 1103 both reasonable compensation for their services and reimbursement for all actual and necessary expenses.

As stated by the Ninth Circuit of Appeals: "The primary method used to determine a

9

1  reasonable attorney fee in a bankruptcy case is to multiply the number of hours

2  expended by an hourly rate." Southwestern Media, Inc. v. Rau, 708 F.2d 419, 427 (9th

3  Cir. 1983). The reasonableness of the number of hours expended on a task is based on

4  whether the services provided were actual and necessary. See 11 U.S.C. § 330(a)(1)(A);

5  see also In re Nucorp  Energy, 764 F.2d at 658.  The reasonableness of the hourly rate is

6  based on the cost of comparable services charged in the area in bankruptcy and non-

7  bankruptcy matters. See In re Circle K Corp., 294 B.R. 111, 121-22 (Bankr. D. Ariz.

8  2003) (citing In re Yermakov, 718 F.2d 1465, 1471 (9th Cir. 1983)). Section 330(a)(3)

9  further states:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including(A) The time spent on such services;(B) The rates charged for such services;(C) Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;(D) Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and(E) Whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

16

17  11 U.S.C. § 330(a)(3).

18      A&B submits that the services rendered for which compensation is sought in this

19  Application have been beneficial to the estate, that the costs incurred have been

20  necessary and proper, and that the sums requested for the services rendered and the

21  costs incurred are fair and reasonable.  The standards set forth in In re Circle K Corp.,

22  294 B.R. 111, as well as those enunciated in Section 330, are fully satisfied in this

23  case.

24                          **VII.    CONCLUSION**

25      For all the foregoing reasons, A&B respectfully requests that the Court enter an

26  order granting the following relief:

27      1.      Allowing compensation the amount of $129,134.40, plus reimbursement

28  of expenses of $4,146.48 incurred during the Fee Period, in the total amount of

31502882.2

1    $133,280.88.

2        2.    Providing that A&B may supplement this Application to seek

3    reimbursement for fees and expenses incurred after the Fee Period relating to the

4    preparation of this Application, responses to any objections to this Application,

5    and attendance at the hearing on this Application, and any other matters that A&B may

6    need to attend to prior to entry of the Confirmation Order.

7        3.    Granting A&B such other relief that is consistent with the foregoing and that

8    the Court deems necessary and appropriate.

9

10   DATED:    September 11, 2009        **ALSTON & BIRD, LLP**

11

12                                      /s/ Leib M. Lerner
                                            Leib M. Lerner

13                                      Counsel for the Official Committee of Unsecured
                                        Creditors of Orange County Nursery, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31502882.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF LEIB M. LERNER

I, Leib M. Lerner, declare:

1.      I am an attorney duly admitted to practice law in the State of California and before the above-entitled Court.  I am an associate with the law firm of Alston & Bird, LLP ("A&B").  The facts set forth herein are true of my own personal knowledge, except for those matters stated on information and belief, which I believe to be true.  If called upon to testify thereto, I could and would do so competently under oath.

2.      I make this declaration in support of the First Interim Application of A&B as counsel for the Official Committee of Unsecured Creditors (the "Committee") for Payment of Compensation and Reimbursement of Expenses (the "Application").

3.      The Application conforms to Federal Rules of Bankruptcy Procedure Rule 2016 and Local Bankruptcy Rule 2016-1.  A&B understands that fees and expenses reimbursement are subject to the standards set forth in those rules.

4.      The Order approving the retention of A&B as counsel for the Official Committee of Unsecured Creditors (the "Committee") nunc pro tunc to March 3, 2009, was entered on April 22, 2009.

5.      A&B seeks compensation in the $129,134.40 in fees and reimbursement of expenses of $4,146.48 incurred during the Fee Period, in a total amount of $133,280.88 for the period of March 3, 2009 through August 31, 2009 (the "Fee Period").    A&B also intends to supplement this application for reimbursement for fees and expenses incurred after August 31,2009 through the date of the hearing on this Application.

6.      The attorneys primarily responsible for providing services to the Committee are Diane C. Stanfield and myself.  Other A&B attorneys rendered services on matters requiring their particular expertise or when their services were otherwise required, and non-attorney professionals provided services when appropriate.

12

31502882.2

7.    The background and qualifications for A&B professionals who rendered

services to the Committee during the Fee Period are attached hereto as <u>Exhibit 3</u>.  A list

of each professional and paraprofessional rendering services to the Committee during

the Fee period, with their total number of hours worked and fees requested is attached as

<u>Exhibit 2</u>.

8.    To provide effective, efficient representation to the Committee, A&B

allocated responsibilities among attorneys based upon each individual's comparative

expertise and knowledge, and allocated work to attorneys with lower hourly rates

whenever practicable.  Mr. Rallis was primarily responsible for matters relating to the

initial analysis of the case and representation of the Committee (as of the date of this

Application, Mr. Rallis has joined another law firm and is no longer working for A&B).  Ms.

Stanfield was responsible for strategizing and negotiations concerning the Plan and

Disclosure Statement, negotiation with counsel for the Debtor concerning other issues

arising in the case, communications and negotiations with the Minority Shareholders

concerning resolution of issues concerning possible conversion of the case or

appointment of a trustee as well as subordination issues which are currently the subject

of cross-motions between Debtor and the Minority Shareholders, and most Court

appearances.  I was responsible for day to day oversight of the case, regular

communication with Committee members, attendance at depositions and meetings and

participating in strategy and negotiations concerning the Plan and Disclosure Statement.

9.    I believe that A&B allocated its resources effectively and efficiently, and

consequently that it minimized the expense to the Committee and avoided unnecessary

duplication of effort.  The rates charged by A&B professionals are comparable to those

charged by other experienced and skilled professionals, with bankruptcy and

nonbankruptcy practices, in the Central District of California.  In addition, A&B offered its

services to the Committee for professional and paraprofessional services on an hourly

basis discounted by fifteen percent (15%).  A&B did not charge for travel time to and from

13

1  Court appearances, the 341(a) meeting of creditors, or depositions noticed by the Debtor

2  or the Minority Shareholders.

3       10.    The following exhibits, which are incorporated into this Declaration by

4  reference, set forth the detail of services rendered for which compensation is sought and

5  costs and expenses for which reimbursement is sought:

6       Exhibit 1:  A summary of all fees requested, divided by task code and also by

7  month in which the services were performed.

8       Exhibit 2:  For each individual billing time to the case, the hourly rate for the fee

9  period; the total hours for which compensation is sought, and the total compensation

10  requested.

11      Exhibit 3: A description of the professional education and experience of each

12  individual billing time to the case.

13      Exhibit 4:  A detailed listing of all time for which compensation is sought, by date,

14  description of service, amount of time spent, and identification of person rendering the

15  service (consisting of invoices for the months of March 2009 through August 2009

16  collectively).

17      Exhibit 5:  A summary of all costs and expenses for which reimbursement is

18  sought, divided by category.

19      I declare under penalty of perjury under the laws of the United States of America

20  that the foregoing is true and correct.  Executed September 11, 2009 at Los Angeles,

21  California.

22

23              ___/s/ Leib M. Lerner_____
                Leib M. Lerner
24

25

26

27

28

31502882.2

| In re: ORANGE COUNTY NURSERY, INC., a California corporation, | CHAPTER 11 |
|---|---|
| | CASE NUMBER: 9:09-bk-10165-RR |
| Debtor(s). | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 S. Hope Street, Los Angeles, California 90071

The foregoing document described as **FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF ALSTON & BIRD LLP, COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; DECLARATION OF LEIB M. LERNER IN SUPPORT THEREOF [11 U.S.C. § 331]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 11, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒    Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:** On September 11, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒  Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/11/2009 | Melanie Mizrahie | /s/ Melanie Mizrahie |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                        **F 9013-3.1**

31502882.2

**IN RE:  ORANGE COUNTY NURSERY, INC.**
**UNITED STATES BANKRUPTCY COURT**
**CHAPTER 11 – CASE NO. 9:09-bk-10165-RR**
**SERVICE LIST**

**SERVED BY NEF**

- Donald T Dunning    ddunning@dunningLaw.com

- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov

- David S Kupetz    dkupetz@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com

- Leib M Lerner    leib.lerner@alston.com

- Elissa Miller    emiller@sulmeyerlaw.com

- Randall P Mroczynski    randym@cookseylaw.com

- Randy P Orlik    rorlik@coxcastle.com

- Mark D Poniatowski    ponlaw@ponlaw.com

- Peter Susi    cheryl@msmlaw.com, peter@msmlaw.com

- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

- Steven Werth    swerth@sulmeyerlaw.com

**SERVED BY U.S. MAIL**

**HONORABLE ROBIN L RIBLET**
U.S. Bankruptcy Court - Northern Division
(Bin Outside of Suite 103)
1415 State Street
Santa Barbara, CA 93101-2511

**COUNSEL FOR DEBTOR**
David S. Kupetz, Esq.
Sulmeyer Kupetz
333 S. Hope St. 35th Floor
Los Angeles, CA 90071

**OFFICE OF THE UNITED STATES TRUSTEE**
Office of the U.S. Trustee - Northern Division
Attn: Brian Fittipaldi, Esq.
128 E. Carrillo Street, Suite 126
Santa Barbara CA, 93101

**DEBTOR**
Orange County Nursery, Inc
6069 Maureen Lane Unit A
Moorpark, CA 93021

993334.1

i